**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JESSE LYNCH a/k/a JESSE LANGLEY, #1868635 | * | |
| | * | |
| Plaintiff | | |
| | * | |
| v. | | CIVIL ACTION NO. GLR-13-998 |
| | * | |
| CORRECTIONAL OFFICER KENION, et al. | | |
| | * | |
| Defendants | | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court are Defendants', Sergeant Kimberley Lewis, Sergeant Ahmed Yousuf, Correctional Officer Olabode Akinroyeje, and Correctional Officer Stephen Kenion[1], Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 20), and Plaintiff's, Jesse Lynch, a/k/a James Langley, Motion for Extension of Time (ECF No. 22) and Motion to Proceed (ECF No. 23)[2]. After review of the pleadings and applicable law, the Court determines that a hearing is unwarranted. See Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendants' Motion to Dismiss, construed as a Motion for Summary Judgment, will be granted.

---

[1] The Clerk is DIRECTED to amend the docket to reflect the correct spelling of the individual Defendants' names.

[2] Plaintiff's Motion for Extension of Time (ECF No. 22) will be granted nunc pro tunc and his Motion to Proceed (ECF No. 23) will be construed as an opposition to Defendants' Motion to Dismiss.

1

**I. Background**

Plaintiff, an inmate currently confined at the Roxbury Correctional Institution, alleges he was assaulted by staff on three occasions in March of 2013, while a pretrial detainee housed at the Maryland Reception Diagnostic and Classification Center ("MRDCC"). ECF No. 1.

First, Plaintiff alleges on March 4, 2013, he was assaulted by Akinroyeje who pulled, bent, and ripped his arm in the cell door feed slot while Yousuf held his arm in place. Id. Defendants dispute Plaintiff's allegations and offer the following facts in opposition. On the morning of March 4, 2013, Akinroyeje and Yousuf were securing Plaintiff into his cell after Plaintiff's shower. ECF No. 20, Exs. B & C. After placing Plaintiff in the cell, Akinroyeje opened the feed slot in the door and directed Plaintiff to step to the door and place his hands through the slot so the handcuffs could be removed. Id. Plaintiff refused to step to the door and demanded to speak to Lieutenant Ragin. Id., Ex. B. Akinroyeje advised Plaintiff that Ragin would see him during his normal rounds and again ordered Plaintiff to step to the door to be handcuffed, but Plaintiff refused. Id., Ex. B. Yousuf then ordered Plaintiff to step to the door so the handcuffs could be removed. Id. Plaintiff complied, stepping to the door and extending his hands though the feed slot. Id., Exs. B & C. As Akinroyeje removed the cuff from Plaintiff's right wrist, Plaintiff pulled back forcefully with his left wrist, attempting to snatch the handcuffs from the officer who kept hold of them. Akinroyeje directed Plaintiff to stop resisting. Id.

Yousuf stepped in, took hold of the handcuffs, and directed Plaintiff to stop resisting. Yousuf removed the handcuffs and the slot was secured without further incident. Akinroyeje and Yousuf aver they neither struck Plaintiff nor took any action other than what was required to prevent Plaintiff from pulling the handcuffs into his cell. Id. Plaintiff did not ask for medical attention after the incident. Id., Ex. C.

2

Within an hour of the incident, Lt. Ragin, MRDCC's Intelligence Officer, entered Plaintiff's housing tier for rounds where he noticed Plaintiff acting aggressively. Ragin attempted to learn why Plaintiff was upset. Plaintiff responded that he did not want a shower but would prefer more time on the telephone. Ragin advised Plaintiff that all of the inmates on the unit received the same shower and telephone privileges and assured Plaintiff he would have an opportunity to use the telephone. Plaintiff did not report to Ragin that he had been assaulted by Yousuf and/or Akinroyeje. Id.

Plaintiff first reported the alleged assault during the next officer shift soon after being served with an unrelated disciplinary infraction. Id. Ex. A, p. 5. Upon report of the incident, Plaintiff was taken to MRDCC's Medical Unit for an evaluation. Plaintiff complained of "minimal pain." Id., p. 13. There were no lacerations, however, redness of the left wrist was observed. Photographs were taken which showed no sign of injury. Id., p. 15. Plaintiff was provided Tylenol. Id., p. 13. A Use of Force Report was prepared and the matter referred to the Internal Investigation Unit ("IIU"). Id., Ex. A.

The investigator found no credible evidence that Plaintiff was assaulted as alleged. The injury to Plaintiff's wrist was consistent with his pulling against the handcuff attached to the wrist, rather than with his claim that his arm was punched repeatedly with fists and keys by two correctional officers. Id. Additionally, during a recorded telephone call between Plaintiff and his wife, placed approximately 15 minutes after the incident, Plaintiff reported that he "bucked and zapped out on these bitches" and the officer "grabbed his arm and banged it with a pair of cuffs." Id., Ex. E.

Plaintiff filed a request for administrative remedy ("ARP") regarding the incident. Id., Ex. A, pp. 18-26. Plaintiff advised the ARP investigator that another inmate, Cassone Taylor,

3

witnessed the incident. Taylor was interviewed and asserted that he saw the handcuff removed from Plaintiff's wrist and Plaintiff pull his hands into the cell. He recalled that once Plaintiff was persuaded to return to the slot and placed his hand through the slot, Yousuf held Plaintiff's arm down while removing the handcuff. Taylor also indicated that he did not witness either officer strike or punch Plaintiff. Id., 24-25.

Next, Plaintiff alleges on March 21, 2013, Kenion punched him in the face and body while he was handcuffed and that Correctional Officer Lashika Camara intervened to stop the beating. Camara avers, however, that she did not witness Plaintiff being assaulted by Officer Kenion, any other correctional officer, or any other inmates.[3] Id. Camara also avers that Plaintiff had a reputation for causing problems with staff while detained at MRDCC. Id., Ex. F. On March 21, 2013,

Upon reporting the alleged assault on the same day, Plaintiff was taken to the medical unit. Id., Ex. A., pp. 55-59. The nurse observed no acute distress, swelling, cuts, or bruising. Plaintiff complained of swelling under his left eye, but the nurse observed no swelling. Further, Plaintiff was observed to be "laughing and joking during assessment." Id., p. 56.

Finally, Plaintiff alleges on March 30, 2013, he was assaulted by Lewis and Kenion on an elevator while he was in full restraints. He asserts the officers punched him, threw him into a food cart, and pushed him, head first, into the elevator wall many times. Id.

Sgt. Lewis avers that on March 30, 2013, she was boarding an elevator at MRDCC when she saw Plaintiff, who was already on the elevator with several other officers. Lewis does not recall who the other officers were. Id., Ex. G. Lewis avers that when Plaintiff saw Kenion he

---

[3] Although having been served with the Complaint, Kenion is no longer employed by Department of Public Safety and Correctional Services. Efforts to contact him by counsel for DOC in order to obtain an affidavit were unsuccessful.

began speaking angrily to Kenion and threatened to cause trouble for him.  Kenion did not board the elevator with Plaintiff and Lewis avers that neither Kenion nor any other officers on the elevator struck or physically abused Plaintiff during the ride.  Id.

Upon reporting the alleged assault on the same day, Plaintiff was taken to the medical unit.  Id., Ex. A, p. 58.  He complained of pain in his left rib cage and elbow. He was examined by a physician who observed no bruising, swelling or injury.  It was noted that Plaintiff was able to bend and raise his arms and elbow without discomfort.  Id.

## II. Discussion

**A.     Standard of Review**

**1. Motion to Dismiss**

To survive a Rule 12(b)(6) Motion to Dismiss, a complaint must set forth "a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556.  In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  A pro se complaint,

> however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)) (internal quotation marks omitted).

2. **Summary Judgment**

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir.) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248, accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants'

Motion will be construed as a Motion for Summary Judgment.

**B.     Analysis**

    **1.     Exhaustion Requirement**

Defendants argue Plaintiff failed to exhaust his claims through an available administrative remedy procedure.  The Court disagrees.

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012).  Thus, the PLRA's exhaustion requirement requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd 98 F.App'x 253 (4th Cir. 2004).  Exhaustion is required even if the relief sought is not attainable through resort to the administrative remedy procedure.  Booth v. Churner, 532 U.S. 731, 740-41 (2001).  A claim which has not been exhausted may not be considered by this Court.  See Jones v. Bock, 549 U.S. 199, 220 (2007).  Administrative remedies must, however, be available to the prisoner and the Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are.  Rather, to be entitled to bring suit in federal court, a prisoner must

>have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.

Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted).

Defendants maintain that Plaintiff filed 23 ARPs while detained at MRDCC but only one alleged assault by staff. Namely ARP #0320-13, which concerned the March 4, 2013 incident. ECF No. 20, Ex. H. All other ARPs arose out of complaints regarding institutional practices or dietary concerns. Id. Similarly, Scott Oakley, Executive Director of the Inmate Grievance Office, avers that Plaintiff has never filed a grievance with the IGO. Id., Ex. I.

Plaintiff, however, claims that he filed ARPs regarding each alleged assault but never received any response. ECF No. 23. Plaintiff has attached a copy of the ARP concerning the March 4, 2013 incident. ECF No. 25, p. 6-9. He has also provided a copy of an ARP dated April 17, 2013, directed to the Warden, wherein he references that he filed an ARP on March 21, 2013, concerning an assault at MRDCC which occurred on that date. Id., pp. 10-12. He provides a copy of an ARP dated March 22, 2013, directed to the Warden, in which he complains of being assaulted on March 21, 2013, which did not contain specific information. Id., p. 17. Plaintiff has also attached a copy of an ARP dated April 17, 2013, directed to the Warden, indicating he did not receive a response to his other ARPs. Id., pp. 19-21. Additionally, Plaintiff asserts that he was told by Warden Crowder that the three assaults would be investigated by IIU but he was never interviewed accordingly. ECF No. 23.

It is undisputed that Plaintiff filed an ARP regarding the March 4, 2013 incident. Given Plaintiff's allegations regarding the IIU investigation, and his evidence that he attempted to institute the grievance process regarding the March 21 and 30, 2013 incidents, the Court cannot

conclude that Plaintiff did not exhaust his available remedies. This Court is familiar with the Division of Correction's practice to decline an investigation for an ARP where one is already pending before the IIU. Thus, the Court concludes that the exhaustion requirement regarding the alleged excessive use of force is satisfied where, as here, the administrative procedure is unavailable.

### 2.    Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley v. Albers, 475 U.S. 312, 321 (1986). Absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1177 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. See Wilkens, 130 S. Ct. at 1177.

"When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective [standard], a court may allow an inmate's claim to go to the jury only if it concludes that the evidence viewed in the light most favorable to the claimant, 'will support a reliable inference of wantonness in the infliction of pain.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)).

9

Defendants deny that Plaintiff was assaulted as alleged in the Complaint.  With respect to the March 3, 2013 incident, Akinroyeje and Yousuf aver, and Plaintiff's cellmate confirms, that Plaintiff was not struck with fists or keys as alleged.  The need for application of force was occasioned by Plaintiff's refusing to obey orders to place his hands through the feed slot so his handcuffs could be removed and his effort, once one hand was free, to pull the handcuffs into the cell with him.

Plaintiff admitted, in a statement given shortly after the incident that he refused to place his hands through the feed slot until he was permitted to speak with Lt. Ragin.  ECF No. 25, p. 14.  He further admitted to pulling back when the cuffs were being removed.  Id.  Permitting an inmate to keep possession of a partially secured handcuff creates a security concern for staff because the handcuff could be used as weapon.

The reports generated by the medical department are entirely consistent with Defendants' version of events.  Plaintiff did report the assault to Lt. Ragin, with whom he spoke within an hour of the incident.  Nor did he mention any injury when he spoke with his wife shortly after the incident.  Further, Plaintiff's eyewitness statement supports Defendants' version of events, and the IIU and ARP investigation found Plaintiff's allegations not credible.  Thus, the evidence demonstrates that Akinroyeje and Yousuf employed only the amount of force necessary to defend themselves and restore security.

 With respect to the March 21 and 30, 2013 incidents, there is simply no objective evidence that the events ever occurred.  Plaintiff's medical records show no sign of any injury arising from the alleged incidents and are entirely inconsistent with his claims that he was repeatedly hit, stomped, and slammed into walls during the two alleged events.  Moreover, Plaintiff's witnesses deny that any incident occurred.  Although a court may not ordinarily

10

determine credibility between the parties, Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991), "[w]hen opposing parties tell two different stories, one of which blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion of summary judgment." Smith v. Ozmint, 578 F.3d 246, 254 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

### III. Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a Motion for Summary Judgment, will be granted.[4]  A separate Order follows.

September 5, 2014                                                              /s/

                                                                                             George L. Russell, III
United States District Judge

---

[4] Having found no constitutional violation the Court need not address Defendants' claim of qualified immunity.